ROCKWELL KING

*v.*

THE CITY OF CHICAGO.

*Filed at Springfield September 27, 1884.*

1. MUNICIPAL CORPORATIONS—*passage of annual appropriation ordinance.* Although a city council is made to consist of a mayor and aldermen, the requirement, under the general law for the incorporation of cities and villages, that the city council shall, within the first quarter of the fiscal year, pass an ordinance to be termed the "annual appropriation bill," does not mean that there shall be passed a complete ordinance, having the sanction both of the city council and mayor, within that time. City council and mayor are distinguished from each other in this respect.

2. SAME—*of the mayor's veto of appropriation bill.* The city council is given the last moment of the period named to pass the appropriation bill, after which the mayor has at least five days in which to give or withhold his approval, either in whole or in part.

3. SAME—*what is a passage of appropriation ordinance within the first quarter.* Upon the return by the mayor of an appropriation ordinance with a veto as to any item thereof, it is made the duty of the city council to reconsider the vote by which it passed, and if upon such reconsideration after the expiration of the first quarter of the fiscal year, vetoed items of an appropriation bill passed within such quarter be passed by the council over the veto, the appropriations are to be taken, within the meaning of the law, as having been passed within the first fiscal quarter.

4. So where the mayor of a city returns an appropriation ordinance with his veto as to one item thereof, for the reason that it is too large, the same having been passed on the last day of the first quarter of the fiscal year, but returned at the next meeting of the council thereafter, and the city council then passes the same, at a reduced sum, over the veto, this will be regarded as an adherence to the appropriation first made, in part, and the same will be legal, as having been passed in proper time. The right to pass the whole over a veto includes the power to pass the same in part, and adhering in part to the item of appropriation is not a further appropriation.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. HENRY M. SHEPHARD, Judge, presiding.

Mr. Geo. Mills Rogers, for the appellant.

Mr. F. S. Winston, Jr., Corporation Counsel, for the appellee.

Mr. Justice Sheldon delivered the opinion of the Court:

The bill of complaint in this case, filed by a tax-payer of the city of Chicago, alleges that the city is organized under the general law for the incorporation of cities and villages; that its fiscal year runs from January 1 to January 1; that it is the duty of the city council to pass the annual appropriation bill within the first quarter of the fiscal year, and that no appropriations can legally be made after such time except by a sanction of a majority of the legal voters of the city, and that it is unlawful to add to the corporation expenditures in any year anything above the amount provided for in the annual appropriation bill, except upon the happening of a casualty or accident; that there was duly passed on March 31, 1884, (the last day of the first quarter of the fiscal year 1884,) the annual appropriation bill for said fiscal year; that the next regular meeting of the city council occurred on April 7, 1884, at which meeting the mayor vetoed a number of items or appropriations contained in the bill, among which was the following: "For salary of three policemen for mayor's and comptroller's offices, at $1000 each, $3000." The objection made by the mayor was, that two instead of three policemen were all that were needed for the service, and that a salary of $945 each, instead of $1000, was sufficient. The bill further alleges that upon receipt of the veto message the vote by which the appropriation bill was passed was duly reconsidered by the city council at the meeting of April 7, 1884, when it agreed, by a vote of twenty-nine yeas to two nays, to adhere to the item for policemen for mayor's and comptroller's offices, and pass the same to this extent,—that is to say, to appropriate for salary of two instead of three

policemen for said purpose, and to fix said salaries at $945 instead of $1000 *per annum,* as recommended in the veto message, and the said item as passed by the council at the meeting of April 7, 1884, by said vote, was as follows: "For salary of two policemen for mayor's and comptroller's offices, at $945 each, $1890." The bill avers that the said appropriation was duly approved by the mayor after being deposited in the office of the city clerk, and that due publication was had; that since the passage of said appropriation bill on March 31, 1884, there had been no petition by a majority of the legal voters of the city for any further appropriation, and no such proposition had been voted upon, and that since that time there had occurred no casualty or accident. The bill charges that this appropriation for two policemen, as passed April 7, 1884, was illegal, in that it was not made within the first quarter of the fiscal year, and an injunction was asked to prevent the city and its officers from incurring any expense or entering upon any contract based upon such appropriation. A demurrer to the bill was sustained, and the bill dismissed. On appeal to the Appellate Court for the First District the decree was affirmed, and the complainant appealed to this court, the proper certificate having been made.

The sole question which is presented for our decision upon the demurrer to the bill, is as to the legality of the appropriation in question, in the respect of its having been made, or not, by the city council within the first quarter of the fiscal year.

The provisions of the general law governing the passage of appropriation bills in chapter 24, of the Revised Statutes of 1874, are as follows: "The city council of cities, and board of trustees in villages, shall, within the first quarter of each fiscal year, pass an ordinance, to be termed the 'annual appropriation bill,' in which such corporate authorities may appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of

such corporation, and in such ordinance shall specify the objects and purposes for which such appropriations are made, and the amount appropriated for each object or purpose. No further appropriations shall be made at any other time within such fiscal year, unless the proposition to make each appropriation has been first sanctioned by a majority of the legal voters of such city or village, either by a petition signed by them, or at a general or special election duly called therefor." (Art. 7, sec. 2.) "The city council shall consist of the mayor and aldermen." (Art. 3, sec. 1.) "All ordinances passed by the city council shall, before they take effect, be deposited in the office of the city clerk; and if the mayor approves thereof he shall sign the same, and such as he shall not approve he shall return to the council with his objections thereto, in writing, at the next regular meeting of the council occurring not less than five days after the passage thereof. Such veto may extend to one or more items or appropriations contained in any ordinance making an appropriation, or to the entire ordinance; and in case the veto only extends to a part of such ordinance, the residue thereof shall take effect and be in force." (Art. 3, sec. 18.) "Upon the return of any ordinance by the mayor, the vote by which the same was passed shall be reconsidered by the council, and if, after such reconsideration, two-thirds of all the members elected to the city council shall agree, by yeas and nays, to pass the same, it shall go into effect, notwithstanding the mayor may refuse to approve thereof." (Art. 3, sec. 19.)

Although the city council is made to consist of the mayor and aldermen, the requirement that the city council shall, within the first quarter of the fiscal year, pass an ordinance to be termed the "annual appropriation bill," does not mean that there shall be passed a completed ordinance, having the sanction of both city council and mayor, within that time. City council and mayor are distinguished from each other in this requirement. The council is given until the last moment

of the period named to pass the appropriation bill, and then afterward is to come the action of the mayor upon it. The law expressly provides for the action of the mayor upon an ordinance after it shall have been passed by the city council, giving him at least five days' additional time therefor, in requiring that all ordinances passed by the city council shall, before they take effect, be deposited in the office of the city clerk, for the mayor to approve or not approve, and that such as he shall not approve he shall return to the council with his objections thereto, in writing, at the next regular meeting of the council occurring not less than five days after the passage thereof. Upon the return of the ordinance by the mayor, it is made the duty of the council to reconsider the vote by which the same was passed. If upon such reconsideration after the expiration of the first quarter of the fiscal year, vetoed items of an appropriation bill passed within such first quarter be passed by the council over the veto, the appropriations are to be taken, within the meaning of this provision in question, as having been passed within the first fiscal quarter. This was so expressly decided by this court in *Fairfield* v. *The People*, 94 Ill. 245. There, under a former but similar charter to the law under which the city of Chicago is now acting, in that it required all appropriations to be passed within the first quarter of the fiscal year, the appropriation ordinance for the fiscal year commencing April 1, 1873, was passed by the city council June 30, 1873, which, as in this case, was the last day of the quarter. At the next regular meeting of the council, on July 7, 1873, (after the expiration of the first fiscal quarter,) a message was presented by the mayor vetoing certain items of the appropriation bill, and at that meeting the council passed most of the vetoed items over the veto. It was claimed that such items were illegal, in not having been passed within the first quarter of the fiscal year, but it was held that the appropriations were made dur-

ing the first quarter of the fiscal year, within the meaning of
the charter provision.

We think that decision must be held to govern the present
case.   It is true the cases differ in the respect that in the
*Fairfield case* the council adhered to the items of appropria-
tion as before passed, while in the present case the appropri-
ation is not the same as originally passed, but changed by
reducing it.   We do not see that this makes any difference
between the cases, in principle,   It was considered, in the
former case, that the subsequent action of the council after
the first quarter of the fiscal year, amounted in law but to an
adherence to appropriations previously made,—and for the
same reason, we think, it must be regarded, here, that the
subsequent action of the council on June 7, 1884, reducing
the appropriation in amount and repassing it as reduced,
amounted to an adherence, *pro tanto*, to the appropriation
which had been made on May 31, 1884, and is to be consid-
ered, within the meaning of the statute in this respect, as
having been made within the first quarter of the fiscal year.
The whole includes a part.   The passage of the appropriation
in its entirety within the time limited, included within it the
passage of any part of the appropriation—the reduced por-
tion—within that time.   There was here no change of appro-
priation in object or increase in amount.   The appropriation
was the same, except that it was reduced in amount.   Such
reduced appropriation is not, we think, to be regarded as the
*further* appropriation which the law forbids to be made after
the expiration of the first quarter of the fiscal year, the lan-
guage being:   "No further appropriations shall be made at
any other time within such fiscal year, unless," etc.   The
requirement that the annual appropriation bill shall be passed
within the first quarter of the fiscal year, we regard as to
some extent in the interest of the tax-payer, and that the
reduction of an appropriation is rather for the tax-payer's
benefit, in its tendency to lessen the burden of taxation.

It is objected to the construction we adopt, that if it had been known at the time of the passage of the appropriation ordinance that this smaller amount only would be needed for the mayor's and comptroller's police, the amount in excess might have been granted to some other useful purpose. This is a consideration of minor importance, which dwindles before the power to be able to reduce excessive appropriations.

The further question is raised whether it is in the power of the mayor to veto a particular portion of an item containing several different things for which money is appropriated. The language of article 3, section 18, bearing upon this point, is: "Such veto may extend to any one or more *items* or appropriations contained in any ordinance making an appropriation, or to the entire ordinance," etc. The item here was: "For salary of three policemen for mayor's and comptroller's offices, at $1000 each, $3000." The mayor's veto was not of a particular portion of this item, but of the entire item, so that the question raised is not one which properly arises upon this record, and we do not feel called upon to consider it.

The judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*